COVENANT.

*Case 50.*

*January 14.*

# Bright's Executors *vs* Bright.

### ERROR TO THE MERCER CIRCUIT.
#### *Consideration. Covenant.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

THIS action of covenant was brought upon an extract from a letter written by John Bright, deceased, to his brother, James Bright, the plaintiff, dated in May, 1842. The extract is taken from near the end of the letter, which, after speaking of domestic and general affairs, contains the following words: "Dear Brother: Preston's getting the money that he did from you, has caused me many painful hours. If I had health I soon would get out of debt; the amount is sure to you or your heirs, at some time. If I should die before I can pay it, it then must come to you or your heirs." The declaration avers that Preston, referred to in the letter, was the son of the writer; that he obtained from the plaintiff several specified sums of money, in February, 1839, in January and March, 1840, and in March, 1841, due at date or one day after, and that neither he, nor the writer, nor the defendants, have paid, &c. &c. The defendants craved oyer of the writing declared on, and the entire letter being set out, demurred to the declaration. They also pleaded "no consideration good or valuable." To which plea the plaintiffs replied, relying on the letter itself as showing a consideration of blood between the writer and his son, and of money between the son and the plaintiff, and as thus estopping the defendants from pleading that there was no consideration. The defendants demurred to this replication and the Court having overruled both demurrers, a judgment was rendered against them on their confession, for $431 16 in damages, with the following entry on the record at the foot of the judgment, and as a part of it: "But the defendants, by consent and with the assent of the plaintiff, reserve their points of law on their demurrers herein."

We think it clear that the confession of judgment was made and received merely as an agreed liquidation of damages under the decision of the Court, that the plaintiff was entitled to recover, and that it was not intended and should not operate as a relinquishment of the right to question in this Court, the propriety of that decision. The right being in fact, expressly reserved, and not being inconsistent with the presumed objects of the confession, good faith as well as the consistent construction of the entire proceeding, requires that it should be upheld. We, therefore, consider the case as if presented on the demurrers and a judgment after an assessment of damages upon a writ of enquiry.

First then, as to the declaration: If the writing, as therein set forth, is to be regarded as a covenant founded on sufficient consideration, there is nothing in the writing or in the averments of the declaration, to identify the sums stated to have been obtained from the plaintiff by Preston Bright, as being the money referred to in the letter. The sums stated in the declaration would seem to have been obtained upon regular contracts for repayment by Preston, and as it is not shown why such a transaction should cause many painful hours to the father, it might be inferred that he had obtained other money to which the letter relates, or the letter might refer to one or some of these transactions and not to all. And it is not averred that it did refer to all, or that all were known to the writer. Some such averment we should regard as necessary to give definite application and effect to the instrument, even if it be an enforcible covenant.

But the more radical questions are: 1st. Whether this clause in the body of a letter from brother to brother, referring to private and public matters, is to be regarded as a contract or covenant at all: and 2d. Whether if so regarded, it is founded on any sufficient consideration, either disclosed on its face or averred in the declaration.

We do not doubt that a letter relating either to a proposed or a past transaction between the parties, may be used as evidence of the terms of such transaction, and of any obligation which the writing imports. But here

BRIGHT'S EX'RS.
vs
BRIGHT.

Covenant does not lie upon the following words in a letter from one brother to another: "Dear

BRIGHT'S EX'RS.
*vs*
BRIGHT.

Brother, Preston's getting the money that he did from you, has caused me many painful hours. If I had health I soon would get out of debt, the amount is sure to you or your heirs at some time. If I should die before I can pay it, it then must come to you or your heirs." They import no promise, imply no obligation except at discretion.

is a letter from the writer to his brother, not of business, but of affection, and in the midst of it are contained the two or three sentences relating to money, on which this question arises: Were these sentences intended as evidence of a contract, or to impose an obligation upon the writer, and do they, in fact, contain any stipulations on his part? If the writer had intended to furnish evidence of a contract or obligation, it can scarcely be doubted that he would have expressed the obligation with such condition or qualification as he might have deemed appropriate. But there is no such expression. And although whatever is clearly implied may be entitled to the same effect as if actually expressed, there is no propriety in carrying the terms of the letter beyond their plain and necessary import, in order to make out a contract by construction. Upon the face of the letter and of the declaration, the debt or money referred to, was a pre-existing debt incurred, not by the writer, but by Preston, his son. There is no inference that the father had, in any manner, received the benefit of the transaction, or that he had authorized it, or that he was under any obligation to pay the debt, except as he might be disposed as a father, to pay his son's debt. It is in this sense only, that it is referred to, if at all, in the expressions, "If I had health I soon would get out of debt." The words, "If I die before I can pay it," indicate an intention to pay it if he should be able, or if convenient, but they indicate such intention as a fact merely, and do not import a promise, nor imply an obligation, except as he might choose to pay his son's debts. The words "it is sure to you or your heirs," and "If I die before I can pay it, it then must come to you or your heirs," amount to nothing more than a statement that the debt will be paid at some time—by the writer if he can, and if not, in some way after his death, perhaps he meant out of his son's interest in his estate. If the letter had been written before the debt was contracted, its terms might, perhaps, have been construed as a guaranty. But written in relation to the pre-existing debt of the son, it amounts at most to a statement by the father, that he felt bound and intended to pay the debt of his son

if he could, and that if he could not pay it during his life, it would be paid afterwards. Such a statement in reference to a debt which he was not, in fact, bound to pay, and made casually in a letter such as this, cannot be supposed to have been intended to operate as a contract or covenant to pay, and should not, in our opinion, be so construed. It is an acknowledgment or avowal that he felt bound and disposed to pay, but does not, in itself, import or impose any obligation beyond his own feeling or disposition on the subject. We are, therefore, of opinion that the declaration is defective in not showing any legal obligation on the writer to pay the debt before writing the letter, and therefore, in not showing that the letter itself is a covenant to pay.

But even if a different construction should be given to the letter, and it should be regarded as importing a covenant to pay, &c., we are clearly of opinion that as it does not show upon its face the relation between the writer and the original debtor, Preston, it could not estop the defendants from pleading the want of consideration, even if that relation was, in itself, a sufficient consideration to support the assumption of the debt by the father. The replication was, therefore, not good for the purpose for which it was pleaded, as showing matter of estoppel. And we are also of opinion that it is not good as showing, in answer to the plea, that there was a sufficient consideration. Waiving the question whether the consideration of a written promise to pay the debt of another, should not, under the statute of frauds, appear also in writing, we find no authority nor reason for the position that the relation of father and son is, in itself and alone, a sufficient consideration for the promise of the former to pay the debt of the latter. It is true a Court of equity will enforce a written obligation by the father to convey land to his son, on the ground that proximity of blood is a sufficient consideration to raise a use: *Mahan* vs *Mahan*, (7 *B. Monroe*, 582;) *McIntire* vs *Hughes*, (4 *Bibb*, 186.) But even this has not been done so far as we know, where the relation did not appear in the writing.

*Proximity of blood is a sufficient consideration to authorize a Court of chancery, upon the bond of the father, to decree the conveyance of land to the son: (4 Bibb, 186; 7 B. Monroe, 382,) where the relationship appears in the writing.*

Nor does it necessarily follow from these cases, that a written promise from the father to pay money to the son, would be enforcible at law against the plea of a want of consideration, and much less that such a promise from the father to a third person, to pay the son's debt, would, without other consideration, be enforcible against such plea. No other consideration being averred or shown in this case, either in the declaration or replication, we are of opinion that the plaintiff, upon the face of the pleadings, had no right to recover, and that the Court erred in overruling each of the demurrers.

Wherefore, the judgment is reversed and the cause remanded, with directions to sustain the demurrer to the declaration, and for further proceedings consistent with this opinion.

*Daviess* for plaintiff; *J. & W. L. Harlan and P. B. Thompson* for defendant.