CASE 82—EQUITY—OCTOBER 10, 1882.

# Summers, &c., v. Taylor, &c.

### APPEAL FROM TODD CIRCUIT COURT.

1. It is not necessary to allege or prove, under the General Statutes, that the purchaser acted with the intention to aid his vendor in the fraud.

2. A purchaser for a valuable consideration will not be protected if he had notice of the fraudulent intent of his immediate grantor.

3. The relation of attorney and client is too sacred and important to allow such a transaction as this to stand. The attorney should be affected with notice of the fraudulent intent of his client.

4. Appellee Bailey collected a debt which Garrard owed him by deducting that amount from the consideration that the latter owed the former. It operated as an assignment for the benefit of all Garrard's creditors.

E. W. HINES AND W. L. REEVES FOR APPELLANTS.

1. The consideration of Taylor's conveyance to appellee Terry, who was Taylor's attorney in the suit of appellant against Taylor, was the conveyance by Terry to Taylor's wife of 240 acres of land in Missouri.

2. The petition charges that appellee Terry had knowledge of Taylor's intent to defraud his creditors. The allegation is not sufficiently denied by Terry.

3. The proof clearly shows that Terry had knowledge of the fraudulent intent of his grantor. (Thompson v. Mason, 4 Bibb, 196; Jones v. Read, 4 Dana, 541; Hardin v. Harrington, 11 Bush, 367; 58 Ala., 221; 70 Ill., 503; 36 Iowa, 348; Bump on Fraud. Conveyances, 483, 542, 200; 4 Met., 49; 6 Mon., 205; 7 Ib., 599; 12 Ark., 218; 21 Ib., 22; 34 Miss., 576; 4 J. J. M., 560; 12 Bush, 570; 16 Mon., 541.)

4. Bailey's conveyance is clearly one in contemplation of insolvency with a view to prefer Garrard. (4 Met., 23; 11 Bush, 359; Gen. Stat., 588.)

JOHN & J. W. RODMAN AND G. TERRY FOR APPELLEE TERRY.

1. The deed was made by Taylor to Terry on the 21st February, 1878, and this suit was not brought until the 10th September, 1878, so that it cannot be held to be a conveyance to prefer appellee.

2. Appellee not only had no notice of any fraudulent intent upon the part of Taylor, but he conveyed to Taylor's wife a full equivalent for all he received. She and her husband took possession of the Missouri property, and hold it now.

.3. Taylor owned other property after the exchange with appellee, which he afterwards sold to Jesse Russell. (Short v. Tinsley, 4 Met., 404; Beadles v. Miller, 9 Bush, 409.)

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

Summers sued his guardian, Taylor, and recovered judgment on the 4th of April, 1878, for the sum of $822.

Pending the suit, in February, 1878, Taylor sold and conveyed to his attorney, Terry, who was managing the suit for him, a house and lot in Elkton, and two tracts of land, one containing 22 and the other 11 acres, situate in the same county; also one fourth interest which he owned in the dower of his mother.

Terry, in consideration of these lands, conveyed to Taylor's wife a tract of land owned by Terry in Missouri.

Taylor owed Terry a note for $350, and at the same time, or shortly before, he paid that by assigning to Terry several claims on different persons.

Thus stripping himself of all his property subject to execution, so that when Summers had his execution issued on his judgment thereafter obtained, he could not make anything, and it was returned "no property found."

Summers then instituted this action on the 10th September, 1878, against Taylor, Terry, Garrard, and Baily, and several others, whose names need not be mentioned, as the judgment as to them will not be disturbed, alleging that Taylor had sold and conveyed all his property to his attorney Terry, in contemplation of the judgment named being rendered against him, and with the intent to delay, hinder, and defraud the plaintiff in the collection of his debt after judgment should be rendered on it; and that Terry was not an innocent purchaser for valuable consideration, but that when he bought and accepted the conveyance for the lands

named, he had notice of the fraudulent intent of his grantor, Taylor, in whose fraudulent purpose he participated and aided.

Taylor was constructively summoned, and Terry answered, denying any knowledge or participation in the fraud. The allegations of his answer are not as specific as they should be with reference to the time he was without notice of Taylor's intent, but we will treat them as sufficient, and dispose of the case upon its merits.

Section 1, article 1, chapter 44, General Statutes, declaring every fraudulent gift, conveyance, &c., to be void, provides that "this section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

It is not necessary to allege or prove under our present statute, as was the case under the act 1796, that the purchaser acted with the intention to aid his vendor in the fraud. The statute quoted is very explicit that a purchaser for valuable consideration will not be protected if "he had notice of the fraudulent intent of his immediate grantor."

This language is so plain as to leave no room for construction.

The facts in this case establish with certainty, supposing that Taylor comtemplated the reasonable or necessary results of his own acts, that he made the conveyance with the motive of preventing Summers from collecting his debt.

When he became convinced, after a somewhat protracted litigation, that Summers was bound to succeed, he conveyed substantially all of his property to his attorney in the case, who ought to have known better than any one else the probable results of the suit. He not only did this, but had

the lands which he obtained in exchange, lying in a distant state, conveyed to his wife, thus throwing another hinderance in the way of his creditor, Summers. These acts, if approved, will effectually hinder, delay, and defraud Summers in the collection of his debt.

It is not incumbent on Summers to show that Terry aided his client Taylor in the perpetration of the fraud; hence the only question which necessarily arises as to Terry is, did he have notice of the fraudulent intent of Taylor at. or before he made the conveyance to him?

He was Taylor's attorney, knew all about the suit with Summers, and while it was pending, not two months before the rendition of the judgment, accepted from his client a conveyance which rendered his adversary powerless to collect his debt, however successful he might be in the suit.

He also made a deed for the consideration which he gave. for his client's property to his client's wife, when she had no interest in the land her husband conveyed to him.

This of itself would have put an ordinarily prudent attorney, if not any ordinarily prudent person, upon notice, and especially upon inquiry, as to the motives of the grantor in selling all of his property, and having its proceeds deeded to his wife.

The relation of attorney and client is too sacred and important to allow such a transaction as this to stand, because, if sanctified as a precedent, no creditor might be safe from the delays and hinderance that could be successfully and easily thrown in his path. An attorney, under such circumstances as surround this case, should be affected with notice of the fraudulent intent of his client, regardless of, the absence of an intention on his part to aid in its perpetration.

As Terry, therefore, violated the statute against actual fraud, he must submit to the subjection of the property embraced by Taylor's conveyance to the payment of Summers' judgment.

The proof does not establish that Baily had any notice of the fraudulent intent of Garrard in making the conveyance to him. Garrard was Taylor's surety on his guardian's bond, and evidently conveyed all of his leviable property to avoid paying Summers' judgment; but the evidence fails to show that Baily knew anything of the suit or circumstances of the case, or of the motives of Garrard, and having paid a full valuable consideration for the land, he cannot be held to have notice of the actual fraud of Garrard.

He, however, collected a debt of about $503, which Garrard owed him, by deducting it from the consideration which he gave Garrard for the land, and as the latter made the sale when he was insolvent, and in contemplation of insolvency, this transaction operated as an assignment and transfer of all his property for the benefit of his creditors, the suit having been brought within six months after the conveyance, and appropriate allegations relative to this view of the case being made in the pleadings.

Wherefore, the judgment is reversed as to Terry, Baily, Garrard, and Taylor, with directions to render judgment consistent with this opinion, and affirmed as to the appellees Stovale, Russell, Tandy, Barker, and Miller.